# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| **In re EXPRESS SCRIPTS, INC.** )<br>**PBM LITIGATION** )<br>_____)<br> )<br>This Document Relates to: )<br> )<br>*Wagner*– 4:05cv01081HEA )<br> )<br>*Scheuerman*-- 4:05cv831HEA )<br> )<br>*Brynien* – 4:08cv00627HEA )<br> )<br>*COBA* – 4:05cv01082HEA )<br> )<br>*Lynch* – 4:05cv828HEA )<br>_____) | Master Case No. 4:05md1672HEA |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants Express Scripts, Inc., ESI Mail Pharmacy Service, Inc. And National Prescription Administrators, Inc.'s (collectively, ESI), Motion for Summary Judgment on the Claims of Plaintiffs Wagner, Scheuerman, Brynien, Lynch, and Correction Officers' Benevolent Association of the City of New York, Inc., (COBA), [Doc. No. 424].  Plaintiffs oppose the Motion.  For the reasons set forth below, the Motion is granted.

### Facts and Background

Defendant ESI is a Pharmacy Benefits Manager (PBM).

Defendant ESI Mail is a wholly owned subsidiary of Express Scripts, Inc.

Defendant NPA is a PBM which was acquired by Express Scripts, Inc. in 2002. ValueRx was acquired by Express Scripts, Inc. as a subsidiary in 1998.

The New York State Department of Civil Service ("DCS") administers the New York State Health Insurance Program ("NYSHIP").  NYSHIP administers several health and drug benefit plans that provide medical and drug coverage for active and retired State and local government employees and their dependents. The largest NYSHIP plan is the Empire Plan, which provides coverage to more than one million active and retired State and local government employees and their dependents.

DCS entered into a series of contracts with Connecticut General Life Insurance Company ("CGL" or "CIGNA") to provide and insure the Empire Plan's prescription drug program, covering the period 1998-2003. CGL subcontracted with ValueRx, which was subsequently acquired by ESI, to serve as the PBM for the plan.

Plaintiffs in *Wagner, Scheuerman* and *Brynien* received health care benefits through NYSHIP and the Empire Plan.  The Empire Plan and other plans administered by DCS are governmental plans that are not subject to the Employee Retirement Income Security Act of 1974 ("ERISA").

On August 4, 2004, the New York Attorney General ("NY AG") brought a lawsuit against Express Scripts, Inc., ESI Mail Pharmacy Service, Inc., Connecticut General Life Insurance Company and CIGNA Life Insurance Company of New York, (collectively CIGNA). The NY AG brought its Lawsuit on behalf of: (1) the People of the State of New York; (2) the State of New York, and (3) the NY DCS, the administrator of NYSHIP and the Empire plan. The NY AG Lawsuit did not make any allegations regarding the conduct of NPA, the PBM provider for COBA and the PBA Funds. The NY AG brought his lawsuit pursuant to three statutory bases:

(1) NY Executive Law § 63(1), under which the Attorney General is empowered to prosecute and defend all actions and proceedings in which the State of New York is interested;

(2) NY Executive Law § 63(12), under which the People of the State of New York, by the Attorney General of the State of New York, are empowered to seek injunctive relief, restitution, damages, and costs against any person or business entity that has engaged in alleged repeated fraudulent or illegal acts in the conduct of a business; and

(3) NY General Business Law ("GBL") Article 22-A, § 349 (the New York consumer protection statute), under which the People of the State of New York, by the Attorney General of the State of New York, are authorized to seek injunctive relief, restitution and civil penalties against any person or business entity which has engaged in alleged deceptive acts or practices or false advertising in the conduct of a business.

The AG Lawsuit alleged, inter alia, that ESI and CIGNA, not NPA engaged

in the following conduct in performing PBM services for the Empire Plan and other health benefit plans in the State of New York: Retaining rebates and money that allegedly belonged to the plans; "Artificially inflating" pass-through prices of generic drugs and manipulating its pharmacy pricing "spread"; Selling plan data; Manipulating the "MAC" pricing used in its generic drug substitution programs; and Fraudulently operating its "drug preference" and drug "switching" programs.

The AG Lawsuit alleged that ESI's alleged conduct "often result in higher drug costs for the Empire Plan and other government employee benefit plans and their members," and that ESI, not NPA, "unjustly enriched itself at the expense of" the Empire Plan, its members, DCS, and the State.

The AG Lawsuit also alleged that ESI's drug preference and drug "switching" programs "fail[ed] to take into account patient health and safety."

The AG asserted various causes of action against ESI and CIGNA including alleged: breach of contract claims on behalf of DCS and the NYSHIP/Empire Plans; unjust enrichment; breach of duty of good faith and fair dealing; breach of fiduciary duty; fraudulently or negligently inducing DCS to enter into a contract to administer the NYSHIP Plans; indemnification (CIGNA only); violations of Executive Law § 63(12), based upon alleged fraudulent or illegal business activity; violation of GBL § 349, based upon alleged deceptive acts or practices

(ESI only); and violation of New York Education Law (ESI only).

In its Lawsuit, the AG sought, *inter alia*, the following relief: Injunctive relief enjoining ESI from the activities alleged in the Lawsuit, "insofar as those activities relate to the Empire Plan, other non-ERISA health and prescription drug benefit plans of the State and its political subdivisions, and the members of such plans;" Damages to DCS and the State, with respect to claims arising from the Empire Plan's contract with ESI; *Id.* at Requested Relief No. 2-4; "Directing defendants to pay restitution and damages to injured members of the Empire Plan and other non-ERISA health and prescription drug benefit plans of the State and its political subdivisions."

On July 25, 2006, the supreme court in the AG Lawsuit entered an order granting ESI's motion to dismiss the AG's claim for breach of fiduciary duty, holding that the parties entered into an arms-length business relationship which does not give rise to a fiduciary duty, as a matter of law. The court also dismissed the State's claims for negligent misrepresentation and claims under the New York Education Law. In its Decision and Order, the court denied ESI's motion to dismiss the AG's claim under GBL § 349, holding that defendants' conduct was "consumer oriented and any alleged breach of the contract would have a direct effect on a large number of consumers."

On July 25, 2008, the State of New York entered into a Consent Order and Judgment ("Consent Judgment") with defendants ESI, ESI Mail, and CGL ("Defendants").   The Consent Judgment recites that it was entered into by the Plaintiffs in the AG Lawsuit, which it defines as "the People of the State of New York, the New York State Department of Civil Service, and the State of New York."   The Consent Judgment binds "ESI," which is defined to include "Express Scripts, Inc. and ESI Mail Pharmacy Service, Inc, and their respective past and present subsidiaries, affiliated companies, corporate predecessors, successors and assigns."

Pursuant to the Consent Judgment, the Defendants agreed to pay $27 million "to the State, in full and complete settlement of all causes of action asserted in the Complaint in this matter."  ESI also agreed to specific injunctive relief that will inure to every Client Plan and Consumer in New York.  The Consent Judgment broadly defines "Client Plan," to mean "the Empire Plan and any other pharmacy benefit plan with its principal place of business in New York State for which Defendants either provide or administer a pharmacy benefit plan in New York State."   The definition exempts (I) federal government entities and programs, and (ii) any state other than New York, including any agencies or subdivisions of such other states.  27. The Consent Judgment defines "Consumer"

as any "person who receives prescription drug benefits under a plan sponsored by

a Client Plan."

In return for the consideration set forth in the Consent
Judgment, the Plaintiffs, the People of the State of New York, the
New York State Department of Civil Service, and the State of New
York, agreed to the following release:

The Plaintiffs, individually and collectively, release all Defendants
and their respective past and present parent corporations, subsidiaries,
affiliates, limited liability companies, and partnerships, and the
respective past and present officers, directors, employees, agents, and
attorneys of any of them, as well as the respective predecessors,
successors, executors, administrators and assigns of any of them
(collectively, the "Released Persons") from any and all civil claims,
damages, penalties, and causes of action, which the Plaintiffs could
have asserted through and including the Effective Date of this
Judgment, related either to the parties' performance under the
contracts or subcontracts specified in the Complaint or any
amendments thereto, or to any allegations, omissions, or acts that are
contained in the Complaint filed in this action (the "Covered
Conduct").

In addition, the Plaintiffs agreed not to bring any civil action against ESI:

The Plaintiffs [in the AG suit] covenant and agree that they shall not
proceed with or institute any civil action or proceeding, either
individually or collectively, against the Released Persons, including
but not limited to an action or proceeding seeking restitution,
injunctive relief, fines, penalties, attorney fees, or costs, for any
conduct undertaken or omissions, up through and including the
Effective Date of this Judgment, relating to the Covered Conduct.

The Consent Judgment "is not an admission or denial by Defendants of any

wrongdoing or violation of law or contract whatsoever."

Plaintiffs[1] in *Wagner et al. v. Express Scripts, Inc. and ESI Mail Pharmacy Service, Inc.*, and *Scheuerman et al. v. Express Scripts, Inc. and ESI Mail Pharmacy Service, Inc.*, Cause  Nos. 4:05cv01081HEA and 4:05cv831[2] are New York State employees, retirees, or their dependents, who received health care benefits through NYSHIP and were enrolled in the Empire Plan.  Each of the named Plaintiffs are residents of the State of New York.  Plaintiffs are members of two state employee labor unions which received benefits through NYSHIP.  Plaintiffs allege that NYSHIP, through DCS, contracted with CIGNA (which subcontracted with ESI) on behalf of the state unions of which Plaintiffs are members.  Plaintiffs assert that they are third party beneficiaries of the contract between DCS/NYSHIP and CIGNA/ESI with respect to the Empire plan.

Plaintiffs bring a putative class action on behalf of all New York State employees, retirees, and their dependants whose pharmacy benefits are managed, either directly or indirectly, through the Empire Plan and administered by ESI.

---

[1] NY Plaintiffs, as used herein, refers to the Plaintiffs in the following lawsuits, each of which is included in this MDL proceeding: *Wagner, Scheuerman*, *Brynien*, *Lynch*, and *Correction Officers' Benevolent Association of the City of New York, Inc. ("COBA").*

[2] This Court's docket does not reflect the consolidation of the *Wagner/Scheuerman* cases, which were consolidated in the New York Court.  Although the cases have been consolidated, for administrative purposes, this Opinion, Memorandum and Order will continue to refer to these cases separately.

Plaintiffs allege that a class consisting of Empire Plan and NYSHIP beneficiaries meets the numerosity requirement for a class action, because "at a minimum, there are thousands of Class Members located throughout the State of New York."

The OMCE/UUP allege that ESI improperly performed its PBM duties enriching itself at the detriment of plaintiffs and the class by among other things: (a) misappropriating undisclosed rebates obtained from drug manufacturers; (b) misappropriating undisclosed discounts from pharmacies; (c) receiving and retaining kickbacks pursuant to secret agreements with drug manufacturers to list certain drugs on its formulary and to favor certain more expensive drugs by the practice of "switching;" and, (d) charging more than the contract rate for prescription drugs. The lawsuit filed by the OMCE/UUP challenges ESI's wrongful conduct in the context of a breach of duties owed by it independently to them, including among other things, to reduce health costs.

Plaintiffs in *Brynien et al. v. Express Scripts, Inc. and ESI Mail Pharmacy Service, Inc.*, 4:08cv00627HEA are New York State employees who are members of the New York State Public Employees Federal AFL-CIO, a New York State labor organization, who received health care benefits through NYSHIP and were enrolled in the Empire Plan. Each of the named Plaintiffs are residents of the State of New York. Plaintiffs bring a putative class action on behalf of all New York

State Employees whose non-ERISA pharmacy benefits are provided, either directly or indirectly, through NYSHIP and administered by ESI. Plaintiffs assert that they are intended beneficiaries of the contract between DCS/NYSHIP and CIGNA/ESI with respect to the Empire plan.

Plaintiffs assert that the same alleged conduct and practices alleged in their complaint were the subject of the investigation and Lawsuit by the New York Attorney General.

Plaintiffs allege that a class consisting of Empire Plan and NYSHIP beneficiaries meets the numerosity requirement for a class action, because "at a minimum, there are thousands of Class Members located throughout New York."

The PEF alleges that ESI improperly performed its PBM duties enriching itself at the detriment of plaintiffs and the class by among other things: (a) misappropriating undisclosed rebates obtained from drug manufacturers; (b) misappropriating undisclosed discounts from pharmacies; (c) improperly manipulating and inflating the costs of generic drugs; (d) receiving and retaining kickbacks pursuant to secret agreements with drug manufacturers to list certain drugs on its formulary and to favor certain more expensive drugs by the practice of "switching;" and, (e) charging more than the contract rate for prescription drugs. The lawsuit filed by the PEF challenges ESI's wrongful conduct in the context of a

breach of duties owed by it independently to them, including among other things, to reduce health costs. Because members of PEF pay a percentage of the health insurance premiums paid to ESI and copayments for prescription drugs ESI's conduct inflated insurance premiums and copayments paid by them independent of that paid by DCS and the State.

Plaintiff Patrick Lynch, in *Lynch v. National Prescription Administrators and Express Scripts, Inc,.* Cause No. 4:05cv00828HEA, is the Trustee of the Health and Welfare Fund of the Patrolmen's Benevolent Association of the City of New York and the Retiree Health and Welfare Fund of the Patrolmen's Benevolent Association of the City of New York ("PBA plans"). Plaintiff Lynch maintains his principal place of business at 40 Fulton Street, New York, New York, 10038, and the PBA plans are domiciled in New York.

The PBA plans provide prescription drug benefits to current and retired New York City police officers, pursuant to a collective bargaining agreement with the City of New York. The PBA Plans are governmental plans and are not subject to ERISA.

NPA served as PBM for the PBA plans from 1981-2002; after ESI acquired NPA in 2002, ESI served as PBM to the PBA plans. The PBA plans are funded by the City of New York. Plaintiffs' claims are based upon the following alleged

conduct: pharmacy pricing spreads; mail order pricing spreads, retaining rebates and other moneys from manufacturers; drug "switching" programs; inflating prices of prescription drugs; and selling plan information.

Plaintiff in *Correction Officers' Benevolent Association of the City of New York, Inc. ("COBA") v. Express Scripts, Inc. and National Prescription Administrators, Inc.,* Cause No. 4:05cv01082HEA, is a municipal labor union that represents New York City correction officers. COBA is domiciled in New York, and has its principal office located in New York, New York. COBA represents plan active members who are primarily domiciled in New York and purchase drugs in New York.

COBA provides prescription drug benefits to its members through two trust funds that are funded entirely by money paid by the City of New York. COBA is a New York City public service union, and the COBA plan is not subject to ERISA.

COBA's pharmacy benefits were managed by Express Scripts and/or its subsidiary, NPA.

COBA brings a putative class action of "all self-funded non-ERISA employee benefit plans [], residing in New York, New Jersey, and Pennsylvania, for which [NPA], at least initially, served as the Plans' pharmacy benefits manager ("PBM") and which utilized the NPASelectK  Formulary for the period January 1,

1996 through April 13, 2002."

Plaintiff purports to represent the interests of approximately 11,000 active members of COBA, 4,000 retirees, and what is estimated to be potentially 400,000 additional similarly situated New York City employees.

COBA brought an action against NPA and ESI to recover damages caused by Defendants' breaches of contract, breaches of fiduciary duties, breaches of the implied covenant of good faith, conversion, and, with respect to New York Class members only, for violation of New York G.B.L. § 349. *See* COBA Complaint, generally. Plaintiff asserts that the same alleged acts and practices alleged in its Complaint were the subject of the investigation and Lawsuit by the New York Attorney General. Plaintiff admits that "New York State Attorney General, Eliot Spitzer, filed an action against Express Scripts on behalf of New York State employees."

## Discussion

### Summary Judgment Standard

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

*Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The moving

party has the burden to establish both the absence of a genuine dispute of material

fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Enter. Bank*, 92 F.3d at 747. Once the moving

party has met this burden, the nonmoving party may not rest on the allegations in

his pleadings but by affidavit or other evidence must set forth specific facts

showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson*

477 U.S. at 256; *Krenik v. Le Sueur* 47 F.3d 953, 957 (8th Cir. 1995). "'Only

disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment.' *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923

(8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a

verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248;

*Woods v. DaimlerChrysler Corp.,* 409 F.3d at 990. To survive a motion for

summary judgment, the "nonmoving party must 'substantiate his allegations with

sufficient probative evidence [that] would permit a finding in [his] favor based on

more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Maces.*

*Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity*

*Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The Court will review the facts in this case with the stated standards in mind.

Defendants move for summary judgment on the grounds that Plaintiffs are barred from bringing this action on the grounds that the actions are barred by the doctrine of res judicata. Plaintiffs oppose the motion, arguing that res judicata does not apply because they were not parties to the AG lawsuit, nor is there privity between them.

There is no dispute that New York law applies to this analysis. The Eighth Circuit applies the law of the jurisdiction where the initial litigation occurred in determining whether res judicata applies. *Hillary v. TWA*, 123 F.3d 1041, 1043 (8th Cir. 1997) ("In determining which state's res judicata law applies, 'it is fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum.'").

> Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir.1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law

of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); see also *Burgos*, 14 F.3d at 790. Because the umpire's awards against Jacobson were rendered in the context of a New York state action, "the preclusive effect in federal court of [those] state-court judgment[s] is determined by [New York] law," *Migra*, 465 U.S. at 81, 104 S.Ct. at 896; and our analysis is therefore governed by New York's "transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos*, 14 F.3d at 790 (citing Smith v. Russell Sage College, 54 N.Y.2d 185, 445 N.Y.S.2d 68, 71, 429 N.E.2d 746 (1981)).

*Jacobson v. Firman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir. 1997).

Res judicata "'bars successive litigation of [all claims] based upon the same transaction or series of connected transactions. . . if: (I) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was.' *People ex rel. Spitzes v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 863 N.Y.S.2d 615, 894 N.E.2d 1, 12 (2008)" *Sheffield v. Sheriff of Rockland County Seriff Dept.*, 393 Fed.Appx 808, 811 (2010). New York courts apply a pragmatic test to ascertain whether claims, for res judicata purposes, are part of the same transaction, examining "'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding

or usage.'" *Id.*, quoting, *Xiao Yang Chen V. Fischer*, 6 N.Y.3d 94, 810 N.Y.S.2d 96, 843 N.E.2d 723, 725 (2005).

**Same Transaction or Series of Transactions**

The Attorney General lawsuit, (the AG lawsuit), arises from the same series of transactions. The AG lawsuit was brought on behalf of the People of the State of New York, all governmental plans and their members, alleging that ESI committed wrongful acts to the detriment of the members of government plans for which ESI and its predecessors served as Prescription Benefits Manager, (PBM). The fact that CIGNA and NPA were not parties to the suit is of no consequence. The Consent Judgment entered into in the AG lawsuit encompasses ESI and its predecessors which served as PBM for all governmental plans specifically detailing that the Defendants agreed to pay $27 million "to the State, in full and complete settlement of all cause of action asserted in the Complaint in this matter."

**Judgment on the Merits**

Settlement agreements are judgments on the merits for res judicata purposes.

> The doctrine of res judicata operates to preclude the reconsideration of claims actually litigated and resolved in a prior proceeding, as well as claims for different relief against the same party which arise out of

the same factual grouping or transaction, and which should have or could have been resolved in the prior proceeding ( see *Mahler v. Campagna*, 60 A.D.3d 1009, 1011, 876 N.Y.S.2d 143; Matter of *Kafka v. Meadowlark Gardens Owners, Inc.*, 34 A.D.3d 676, 677, 826 N.Y.S.2d 83; Luscher v. Arrua, 21 A.D.3d 1005, 1006–1007, 801 N.Y.S.2d 379). Here, the Supreme Court properly determined that the doctrine of res judicata precluded it from entertaining the appellant's claims. Those claims had been litigated in a prior CPLR article 78 proceeding commenced by the court-appointed guardian of the appellant's property, which was resolved by a so-ordered stipulation in which the guardian agreed to discontinue the proceeding with prejudice ( see *Matter of State of New York v. Seaport Manor A.C.F.*, 19 A.D.3d 609, 610, 797 N.Y.S.2d 538; *Dolitsky's Dry Cleaners v. YL Jericho Dry Cleaners*, 203 A.D.2d 322, 322–323, 610 N.Y.S.2d 302).

*James M. v. City of New York,* 69 A.D.3d 634, 635, 892 N.Y.S.2d 501, 502

(N.Y.A.D. 2 Dept.,2010).

**Privity of the Parties**

Plaintiffs argue that the privity element does not exist with respect to them and the Attorney General for the State of New York. To the contrary, the AG represented the People of the State of New York. Defendants have established that the Attorney General was vested with the authority to act on Plaintiffs' behalf.

Under NY Executive Law § 63(1), the Attorney General shall

Prosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state, or of any office thereof which requires the services of attorney or counsel, in order to protect the interest of the state, but this section shall not apply to any of the military department bureaus or military offices of the state. No action

or proceeding affecting the property or interests of the state shall be instituted, defended or conducted by any department, bureau, board, council, officer, agency or instrumentality of the state, without a notice to the attorney-general apprising him of the said action or proceeding, the nature and purpose thereof, so that he may participate or join therein if in his opinion the interests of the state so warrant.

This section confers on the Attorney General broad authority to prosecute all types of legal cases. Indeed, the Attorney General brought the AG Lawsuit to represent the New York government plans on behalf of the state and local government employees. The suit encompassed more than the Empire Plan; the suit was brought on behalf of the Empire Plan and all other "non-ERISA health and prescription drug benefit plans of the State and its political subdivisions, and the members of such plans." Plaintiffs' claims based upon specific plans fall squarely within the parameters of the AG suit.

Section 349(b) of the New York General Business Law provides:

Whenever the attorney general shall believe from evidence satisfactory to him that any person, firm, corporation or association or agent or employee thereof has engaged in or is about to engage in any of the acts or practices stated to be unlawful he may bring an action in the name and on behalf of the people of the state of New York to enjoin such unlawful acts or practices and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts or practices. In such action preliminary relief may be granted under article sixty-three of the civil practice law and rules.

NY GBL § 349(b). This statute clearly empowers the AG to bring the AG Lawsuit

based on the alleged misdeeds of ESI and its predecessors. The action taken by the AG in the AG Lawsuit was based on precisely the same transactions and alleged misdeeds alleged by the NY Plaintiffs. The AG Lawsuit, brought on behalf of the People, the Plans and the members thereof, is clearly the essence of the Plaintiffs in the instant cases and sought what Plaintiffs herein seek to accomplish. As such, Plaintiffs are clearly in privity with the NY AG, and are therefore bound by the Consent Judgment. Plaintiffs' claims are therefore barred by res judicata.

## Conclusion

The Attorney General of the State of New York settled the claims of the People of the State of New York, the Plans and their members. Plaintiffs cannot now bring an action against Defendants because of the settlement by way of a Consent Judgment for the same alleged misdeeds, as their claims are barred by the doctrine of res judicata. Defendants are entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary

Judgment, [Doc. No. 423], is GRANTED.

A separate judgment in accordance with this Opinion, Memorandum and

Order is entered this same date.

Dated this 31st day of March, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE